**Jeffrey A. McKee (012279)**
**DAVIS, McKEE, P.L.L.C.**
**1650 North First Avenue**
**Phoenix, Arizona 85003**
**Telephone: (602) 266-7667**
**Fax: (602) 277-9839**
**Email: jmckee@dmflaw.com**

Attorneys for Plaintiff and Relator Arizona Medical Billing, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, *EX. REL.*, ARIZONA MEDICAL BILLING, INC., <br><br> Plaintiff, <br><br> vs. <br><br> FSIX, LLC, dba QUICK DRAW LAB; CINDY FUNK and TODD FUNK, wife and husband; GLENN WELSTAD and JANE DOE WELSTAD, husband and wife; JOHN AND JANE DOES I-X; and ENTITIES I-X, <br><br> Defendants. | Case No.  CV-17-04742-PHX-SPL <br><br><br> **RESPONSE TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiff and *qui tam* Relator Arizona Medical Billing, Inc., by and through undersigned counsel, responds to Defendants' Motion to Dismiss.  Relator respectfully requests that the Court deny the Motion or, alternatively, grant Relator leave to file an amended complaint.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Relator Arizona Medical Billing, Inc. ("AMB") provided billing services to Defendant FSIX, LLC ("FSIX"), dba Quick Draw Lab ("QDL"). These billing services included insurance filing, electronic claim submission, coding, charge analysis and patient billing for deductibles, co-insurance and co-pays. AMB provided services to QDL from July 2014 to June 2015. Complaint ¶ 6. As the billing company, AMB was intimately aware of QDL's internal practices and possesses the records to support its allegations of Defendants' multiple violations of the False Claims Act.

## II.    THE TWO-DISMISSAL ARGUMENT FAILS.

Defendants persist in their Rule 41 two-dismissal rule argument the Court has rejected. The Court has accepted Relator's argument that in Case No. CV-16-01080-PHX-ROS (the "Prior Case"), Relator conceded that the Prior Case should be dismissed, because Relator acknowledged that the companion case in No. CV16-000928-PHX-MHB (the "Companion Case") was the "first-to-file" under the Federal False Claims Act (the "FCA"). Thus, in the Prior Case, the Court entered its Order (Dkt. # 25) holding: "That concession will be interpreted as a voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a). Therefore, the case will be dismissed and the motion to dismiss will be denied as moot."

The Court also accepted Relator's position that the Relator in the Companion Case was not AMB. The Relator was Laurie Diane Fuller ("Fuller"), who voluntarily dismissed the Companion Case after AMB voluntarily dismissed the Prior Case based on the "first-to-file" rule under the FCA. If Fuller had dismissed the Companion Case before the Prior

Case, AMB would not have had to re-file the current action against Defendants, but AMB did not dictate the chronology of the case dismissals. Therefore, AMB has not run afoul of Rule 41(d)'s policy, as Defendants contend, to prevent forum shopping and vexatious litigation.

**III.   RELATOR'S COMPLAINT MEETS THE PLEADING REQUIREMENTS OF RULES 12(B)(6) AND (9)(B) AND PLEADS A HIGHLY PLAUSIBLE SCHEME TO SUBMIT FALSE CLAIMS.**

As demonstrated below, Relator's Complaint fully complies with the requirements of Rule 12(b)(6) and Rule (9)(b). First, none of the elements pled in this case are based on pure speculation. All are supported by factual allegations and the reasonable inferences from those factual allegations. AMB was the billing company for QDL, and thus had first-hand knowledge of its billing practices and possesses the records to support its claims herein.

The Complaint fully meets the "who, what, when, where and how" pleading rubric of Rule 9(b) and states claims for relief under rule 12(b)(6):

A.    **Who**:  Defendant FSIX, LLC ("FSIX") is an Arizona limited liability company, operating as Quick Draw Lab ("QDL"). QDL is a licensed Medicare provider. FSIX acted through its through its senior leadership and management, including Defendant Cindy Funk, the president/CEO of FSIX, and Defendant Glenn Welstad, who took over management of FSIX. Complaint ¶¶ 7-9.

B.    **What**:  Despite knowledge of Medicare's claims processing requirements, QDL launched a practice of violating these requirements. For example, QDL advertised

on its website and represented to patients and their healthcare providers that patients would have no out-of-pocket expenses.  QDL also refused to balance bill patients for co-pays and prohibited AMB from even sending requests for patients' insurance information.

From its business office in Scottsdale, Arizona, QDL established a business model of establishing relationships with licensed healthcare providers in locations within 150 miles of its office to garner the highest round trip for its driver at or under the 300-mile reimbursement range under the travel reimbursement rules, i.e., one dollar per mile up to $300 (a round-trip of up to 300 miles).  QDL regularly collected specimen from multiple patients at one location, but billed Medicare for the full amount of travel reimbursement for each patient rather than prorating the bill among the patients.   QDL also submitted bills to Medicare for reimbursement of travel for locations that were much closer than represented in the billing statements.  Based on QDL's billing history, approximately 80% of QDL's revenue was from fraudulent mileage reimbursement from Medicare.

Based on the allegations in the Complaint, Defendants created, implemented, and knowingly participated in the schemes to knowingly and intentionally submit false claims, and created/submitted reports concerning those claims, in reckless disregard of whether the underlying services were

(a)     substantively performed as billed;

(b)     medically necessary;

(c)     were rendered by providers based on kickback-induced relationships with health care providers within a 150-mile distance from its Scottsdale operation; and

(d)     in compliance with the highly material contractual and Medicare regulatory requirements. Complaint ¶¶ 28-35.

C.    **When:**  QDL has been operating a mobile laboratory in Arizona since September 2014, which became fully operational in November 2014. Beginning in January 2015 and continuing to QDL's termination of its agreement with AMB, QDL repeatedly and systematically violated Medicare's claims processing requirements.  Upon learning that the U.S. Government was investigating Relator's allegations in the Complaint, QDL abruptly closed its doors and ceased operations. Complaint ¶¶ 23, 28 and 29.

D.    **Where**:  From its office in Scottsdale, Arizona, QDL established a business model of forming relationships with licensed healthcare providers in locations within 150 miles of its office to afford the highest round trip for its driver at or under the 300-mile reimbursement range under the travel reimbursement rules.  Complaint ¶ 30.

E.    **How**:  See Complaint ¶¶ 28-32, discussed *infra*.

## IV.    RELATOR HAS PROVIDED SPECIFIC EXAMPLES OF THE SCHEME IN OPERATION FROM WHICH TO INFER DEFENDANTS' LIABILITY.

In addition to the evidence of "who, what, when, where and how," the Ninth Circuit recognizes that, if the scheme is adequately described and gives rise to an inference that claims were submitted, the complaint will comply with pleading requirements under Rule 9(b).  *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010).  The Complaint more than adequately raises a plausible inference that claims arising out of the schemes in the Complaint, and therefore constituting false claims, were submitted by QDL to the Federal Government (Medicare) for fraudulent reimbursement.

QDL further engaged in affirmative steps to hide its knowing nonperformance of these critical functions. As described in detail in the Complaint, despite AMB's warnings and QDL's knowledge of Medicare's claims processing requirements, QDL's conduct of its business was highly suspicious. Specifically, QDL advertised on its website and represented to patients and their healthcare providers that patients would have no out-of-pocket expenses; it refused to bill patients for co-pays. QDL also refused to balance bill patients; no statements were sent. QDL also prohibited AMB from sending requests for patients' insurance information. Complaint ¶ 28.

The Complaint also contains multiple examples of the actual operation of the schemes and their results. Evidence of the schemes is contained in internal documentation and QDL's billing history.

Relators are not required to plead *all* the evidence in their possession of a scheme or wrongful course of conduct. Rather, the examples provided both demonstrate the scheme and its results. Relators have met their pleading burden under Rules 12(b)(6) and 9(b). Defendants' arguments are based on technical disagreements with the *interpretation of evidence* and whether Relator has met an *evidentiary* burden, not a *pleading* burden.

## V.   IF THE COURT IS INCLINED TO GRANT DEFENDANTS' MOTION.

Despite Defendants' protestations that the Complaint is the third one filed by Relators, this is the first instance in which Defendants have been required to respond to the allegations against them. There has been no burden on Defendants from this case until this Complaint and this motion.

As the Ninth Circuit has consistently observed, leave to amend should be granted unless the district court "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal quotation marks and citations omitted). "This approach is consistent with Fed. R. Civ. P. 15(a)." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting Rule 15(a)'s mandate "is to be heeded."); see also U.S. *ex rel. Lee v. SmithKline Beecham*, *Inc.*, 245 F.3d 1048 (9th Cir. 2001).

In assessing whether leave to amend is proper, courts consider "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express, Inc*., 885 F.2d 531 (9th Cir. 1989). In this case, there has been no delay of any nature, no bad faith, no dilatory motive, no failure to cure deficiencies by previous amendments, no prejudice to any party, and no evidence of futility of prior amendment. If the Court determines that the Complaint is deficient, Relator should be given the opportunity to amend.

## VI.   CONCLUSION

Defendants' arguments constitute a smokescreen to obscure their actual conduct of subverting Medicare's mileage reimbursement policy and rules and intentionally submitting false claims to Medicare. This is not a case of an insubstantial, obscure or opaque requirement being overlooked. Rather, it is a case in which Defendants deliberately, consciously and in their self-interest failed and refused to perform even the most basic required safeguards for the expenditure of public money. Defendants carried

out their fraudulent scheme deliberately, despite statutory, regulatory and contractual obligations, and clear guidance, and despite their own representations to the United States Government.

In their motion, Defendants do not suggest that they did not know what wrongs they are alleged to have committed.  Defendants' arguments go to issues of the *weight of evidence*, not of *pleading*.  The facts as pled, taken as true at this pleading stage, lead not only to logical and fair inferences supporting the Complaint but also lead to *inevitable and irrefutable* conclusions in support of Relator's case.

For the foregoing reasons, Defendants' Motion should be denied in its entirety. Relator also requests leave to amend, if the Court is inclined to dismiss any of the counts. *See Lee*, 245 F.3d 25 1048 at 1052-53.

Dated this 11th day of June, 2018.

                         **DAVIS, McKEE, P.L.L.C.**

                              /s/ Jeffrey A. McKee

                    By:  _____
                         Jeffrey A. McKee
                         Attorneys for Relator and Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2018, I electronically transmitted the above document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

/s/ Jeffrey A. McKee

_____